Law Office of Mark Scherzer
Attorney for Plaintiff
49 Nassau Street, Fourth Floor
New York, New York 10038
Tel: (212) 406-9606
Email: markscherzerlaw@verizon.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

LAURIE L. WILBY,                                     :

                    Plaintiff,                     :        21-CV-        ( 9078 )(          )

      -against-                                  :

THE INTERPUBLIC GROUP OF COMPANIES
INC. LONG TERM DISABILITY PLAN                :
and HARTFORD LIFE AND ACCIDENT                        **COMPLAINT**
INSURANCE COMPANY,                             :

            Defendants.                         :

------------------------------------------------------------X

      Plaintiff, Laurie L. Wilby, by her attorney, Mark Scherzer, for her Complaint,

respectfully alleges:

## Preliminary Statement

      1.     Plaintiff brings this action under the Employee Retirement Income Security Act

of 1974 ("ERISA"), as amended, 29 U.S.C. § 1000 *et seq.*, to reinstate payment of disability

benefits which were improperly terminated by defendants The Interpublic Group of Companies,

Inc. ("Interpublic") Long-Term Disability Plan (the "Plan"), and the Hartford Life and Accident

Insurance Company ("Hartford").  Ms. Wilby had been Director of Vantage Global Development

Operations at Interpublic until she became disabled from her occupation on or about November

15, 2011, as a result of, among other conditions, small fiber neuropathy with associated pain,

restless leg syndrome with sleep disturbance and consequent extreme fatigue, functional Parkinsonism, pain requiring sedating medications, and cognitive slowing and difficulty concentrating.

2.      Hartford paid Ms. Wilby short term disability benefits for six months following her date of disability.  Hartford thereafter determined that Ms. Wilby was disabled from "Your Occupation," as required by the Plan, and entitled to long term disability benefits effective May 16, 2012.  Hartford required her to apply to the Social Security Administration ("SSA") for Social Security disability income ("SSD") benefits.  Ms. Wilby applied with the assistance of a vendor to which Hartford referred her.  Social Security Disability benefits were awarded to Ms. Wilby based upon her inability to sustain "substantial gainful activity."  After receipt of 24 months of benefits, the Plan definition of disability changed from "Your Occupation" to "Any Occupation" and Hartford paid her benefits under the new "Any Occupation" standard.

3.      In 2016, despite these repeated determinations to continue payments and even though there was no material improvement in her overall condition and debilitating symptoms, Hartford began to question whether Ms. Wilby's symptoms were justified by a neurological condition.  In 2017 Hartford required that Ms. Wilby be examined by an external medical examiner retained by Hartford but took no action based on that examination for nearly a year, at which time it began a new review and terminated her benefits on the asserted ground – contrary to its own prior determination and that of the Social Security Administration – that she was no longer disabled from "Any Occupation" as of August 29, 2018.  Ms. Wilby appealed, submitting additional evidence to substantiate her disability.  But Hartford discounted objective tests, subjective symptoms and the continued payment of SSD benefits and upheld its claim termination.  Ms. Wilby seeks a determination that she is entitled to Plan disability benefits from

2

August 29, 2018, to the date of judgment, or in the alternative a remand to the Plan to make a new determination as to her qualification for benefits.

## Parties

4.      Ms. Wilby is a citizen of the State of New York, residing in Mendon, Monroe County, New York.

5.      Upon information and belief, Interpublic is a corporation with its principal place of business at 909 Third Avenue, New York, NY.

6.      Upon information and belief, Interpublic established and has at all relevant times maintained the Plan for its employees.

7.      Upon information and belief, Hartford is a stock corporation with its principal place of business at 200 Hopmeadow Street, Simsbury, Connecticut, and is engaged in the business of issuing and administering, *inter alia*, policies of group long term disability income insurance throughout the United States.

8.      Upon information and belief, Hartford is licensed to issue long term disability insurance policies in the State of New York, and at all times relevant to this Complaint has engaged in the insurance business in New York State.

## Jurisdiction and Venue

9.      Upon information and belief, the Plan is an "employee welfare benefit plan" or "welfare plan" subject to ERISA, including its civil enforcement provisions.  ERISA §§ 3(1), 3(3), 4(a), 502(a)(1)(B), and (a)(3), 29 U.S.C. §§ 1002(1), (3), 1003(a), 1132(a)(1)(B), and (a)(3).

10.      The court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, and pursuant to §§ 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), (e)(1), and (g).

11.      Venue is appropriate in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the defendant Plan and defendant Hartford may be found in this district, and because Ms. Wilby's claim under the Plan arises from her employment with Interpublic at its offices in New York, New York.

## FACTUAL ALLEGATIONS

### A. The Plan

12.      Upon information and belief, the Plan's coverage is provided through a group disability income insurance policy contract, bearing a Number GLT-395150, effective January 1, 2009 ("the Policy"), issued by Hartford to Interpublic to insure the Plan. Upon information and belief, the Policy was delivered to Interpublic in the State of New York.

13.      Upon information and belief, Interpublic is the Plan's Sponsor and the Plan

4

Administrator.

14.     Upon information and belief, Hartford is the claim decision-making administrator for benefits provided under the Plan.

15.     Upon information and belief, Ms. Wilby was at all relevant times a covered participant in the Plan based on her employment with Interpublic since 2011.

**B.     The Plan's Disability Benefit Provisions**

16.     After an "Elimination Period," the Plan pays disability benefits (a) for a 24 Month period if the participant is "unable to perform the Essential Duties of Your Occupation" (the "Your Occupation" benefit); and (b) for the remainder of the claim up to the Maximum Benefit Period, if the participant is unable to perform the Essential Duties of "any occupation for which You are qualified by education, training or experience (the "Any Occupation" benefit), and that has an earnings potential greater than the lesser of: 1) the product of your Indexed Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit (the "Wage Requirement").

17.     The gross monthly Plan benefit for an employee like Ms. Wilby who has elected Option 2 coverage is 60% of Pre-disability Earnings, not to exceed a Maximum Monthly Benefit of $25,000.

18.     Plan benefits are reduced by "Other Income Benefits," which include, *inter alia*, SSD benefits, except that cost of living adjustments to the SSD base benefit amount are not deducted.

**C.     Ms. Wilby's Employment at Interpublic**

19.     Ms. Wilby began working as Director of Vantage Global Development Operations at Interpublic on June 13, 2011.  Prior to Interpublic, Ms. Wilby worked for more

than 35 years managing complex financial projects at a chief executive officer level for other companies. As Director at Interpublic, she was required to work long hours, to travel domestically and internationally, to manage employees and engage in client relations in selling complex financial management software and overseeing its installation. Ms. Wilby's salary was $170,000.00 per year.

20.     After only four months at the job, in October, 2011, Ms. Wilby suffered a sudden onset of debilitating fatigue, weakness of the left arm and hand, and pain. Over the following weeks her symptoms progressed to include, among other things, facial droop and weakness, left sided tremors, increased pain, difficulty walking and inability to multi-task.

21.     Ms. Wilby stopped working because of her symptoms on or about November 15, 2011.

22.     As of November, 2011, when Ms. Wilby last worked, her "Basic Monthly Earnings" were $14,166.67.

23.     After consulting with several physicians, including a neuromuscular peripheral neurologist who has continuously treated her, and a movement disorder specialist, Ms. Wilby's physical pain, fatigue and weakness were diagnosed as resulting from small fiber neuropathy, possibly post-viral. Her disturbed speech, gait problems and tremors were diagnosed as resulting from functional Parkinsonism. Neuropsychological testing revealed deficits relative to her presumed premorbid level of functioning in memory, word finding, verbal expression, concentration and processing speed.

24.     Ms. Wilby's treating physicians have consistently found her to be disabled from both her Own Occupation and Any Occupation.

**D.    Hartford's Administration of Ms. Wilby's Claim**

25.    Hartford, which also acted as the administrator for the Interpublic short-term disability plan, awarded Ms. Wilby the full complement of benefits under that plan, from November 12, 2011, through May 11, 2012.

26.    In July, 2012, after extensive investigation, Hartford determined that the restrictions and limitations claimed by Ms. Wilby and supported by her doctors were reasonable, even though no definitive cause had yet been established, and awarded her long term disability benefits retroactive to May 12, 2012.

27.    As a consequence of the Own Occupation approval, Hartford awarded a gross monthly disability benefit payment of $8,500.00, commencing as of May 12, 2012.

28.    Hartford advised Ms. Wilby that she was required to apply for SSD benefits and referred her to a Social Security assistance vendor to initiate a claim on her behalf for SSD benefits.

29.    The vendor obtained approval of SSD benefits for Ms. Wilby at the initial application level, as communicated in SSA's Notice of Award, dated March 1, 2013.  In the Notice of Award, the SSA found that Ms. Wilby was disabled under its rules in November, 2011, and was entitled to benefits from May, 2012 (after the SSD waiting period).

30.    At all relevant times since March, 2013, Ms. Wilby has continued to receive SSD benefits.  Upon information and belief, under SSA rules, Ms. Wilby is considered disabled only if she is unable to "engage in any substantial gainful activity," where "substantial gainful activity," during the relevant period of Ms. Wilby's SSD claim, has been defined by SSA as the inability to generate monthly earnings in excess of $1,010 (2012), $1,040 (2013), $1,070 (2014), $1,090 (2015), $1,130 (2016), $1,170 (2017), $1,180 (2018), $1220 (2019), $1260 (2020) and

$1310 (2021),

31.    Hartford periodically obtained updated claim information from Ms. Wilby and her doctors and, although Hartford articulated no basis to suspect fraud on Ms. Wilby's part, it initiated a Special Investigations Unit investigation of Ms. Wilby which was closed without adverse findings in August, 2013.  In October, 2013, Hartford began investigating Ms. Wilby's disability under the Plan's Any Occupation standard.  In April, 2014, an employability analysis by Hartford found no occupations Ms. Wilby could perform with her restrictions and limitations that would meet the necessary Wage Requirement. Hartford accordingly continued to pay benefits in the Any Occupation period.

32.    As a consequence of Ms. Wilby's approval for SSD benefits, Hartford recovered substantially all Ms. Wilby's SSD benefits, and Ms. Wilby's Plan benefits were thereafter reduced, pursuant to the Plan's provisions regarding "Other Income Benefits." As of August, 2018, Ms. Wilby's monthly Plan benefit after reduction of Other Income Benefits was $6,065.00.

33.    Throughout the years it paid benefits, Hartford regularly requested updated claim and medical information from Ms. Wilby and her doctors, and Ms. Wilby and her doctors complied.

E.    **Hartford's Termination of Ms. Wilby's Claim**

34.    In 2016, in the course of considering offering Ms. Wilby a lump sum settlement of her claim, one of Hartford's claim personnel expressed doubts that Ms. Wilby's reported symptoms were consistent with her medical condition.  Hartford thereafter ordered an external medical examination by a general neurologist which took place in March, 2017.

35.    After an examination of no more than 20 minutes focused principally on Ms.

Wilby's legs and feet, and an examination of medical records in which the examiner failed to note the results of the skin biopsy which showed Ms. Wilby to have small fiber neuropathy, the external examiner found no neurological basis for her disability.

36.     Ms. Wilby's physician disputed the determination, and Hartford took no action based on that finding. It began a new review in March, 2018, and in July, 2018, Hartford obtained a record review from a general neurologist, who also incorrectly concluded that Ms. Wilby had no confirmed diagnosis of a neurological disorder. When the reviewer's oversight was corrected in August, 2018, he admitted the diagnosis of small fiber neuropathy and restrictions stemming from the prescription of medical cannabis (without discussing the symptoms associated with the small fiber neuropathy and functional Parkinsonism which led to the prescription of medical cannabis), but nonetheless found no obstacle to Ms. Wilby working in her prior chief executive officer and project manager roles.

37.     On or about August 22, 2018, a vocational analyst who relied solely on the findings of the examiner and record reviewer, found that Ms. Wilby was capable not only of working, but of working in her former capacity as a president or project director of a company.

38.     On or about August 31, 2018, Hartford terminated Ms. Wilby's claim, relying on the medical examination and record review by general neurologists and the vocational analysis based on their findings.  It paid its last benefit to Ms. Wilby on or about August 29, 2018.

**F.     Hartford's Denial of Ms. Wilby's Appeal**

39.     Under cover of a letter dated January 28, 2019, Ms. Wilby timely appealed Hartford's claim termination.

40.     In support of her appeal, Ms. Wilby described at length the symptoms of exhaustion, pain, numbness, tremors and twitches, gait disorder, sleep disorder, stress, anxiety

and other psychological sequelae of her condition. She also submitted a statement written with her daughter, who observed her suffering from these conditions and her consequent social isolation. She also submitted further information on the occupations she had and was qualified to do, reports of a movement disorder specialist which contradicted medical conclusions of Hartford's consultants, reports of her drug prescription history which contradicted conclusions Hartford had relied upon, and reports of further disabling diagnoses from a board certified neuropsychologist who was treating her.

41. On appeal, Hartford sought further opinions from a consulting psychiatrist, a consulting neurologist, and performed another employability analysis.

42. On or about April 16, 2019, Hartford upheld its claim termination.

43. In upholding its claim termination, Hartford relied upon the opinion of a consulting psychiatrist who found that Ms. Wilby suffered from no severe psychiatric impairment or indications of psychiatric severity such as suicidality or hospitalization that would warrant occupational restrictions. In doing so, it failed to address the reality of the symptoms, painful neuropathy and fatigue which Ms. Wilby's neuropsychiatrist, Dr. Deng, said were caused in part by a somatoform disorder (in conjunction with her underlying small fiber neuropathy and Parkinsonism).

44. In effect, Hartford viewed Ms. Wilby's psychological condition in isolation rather than considering its interaction with her health as a whole.

45. In upholding its claim termination, Hartford also questioned Ms. Wilby's reported cognitive dysfunction, in part by critiquing the 2012 neuropsychological evaluation that had been an element in Hartford's claim approval since the inception of the claim. Hartford gave no reason, in light of Ms. Wilby's worsening physical symptoms, why the cognitive deficits

identified in 2012 would have improved, but rather critiqued the 2012 report's lack of currency and -- despite never having raised this objection between 2012 and 2019 -- its purported lack of "validity testing."

46.     Hartford did not, in the course of its consideration of Ms. Wilby's appeal, request that she undergo current neuropsychological evaluation with validity testing or advise her that she should submit such information as part of her appeal, but rather presented this critique for the first time in deciding its appeal.

47.     Hartford also purported to rely on a neurological review which acknowledged the diagnosis of small fiber neuropathy but noted that it had not progressed to large fiber neuropathy. The report acknowledged decreased motor strength, decreased vibration and temperature in distal extremities, antalgic gait, and restrictions due to cannabinoid treatment, but failed to address Ms. Wilby's reported pain and exhaustion and their relationship to these admitted physical conditions.  The neurological opinion found unrestricted work ability except for driving, climbing and working at heights.

48.     Hartford added to its neurologist's report acknowledgment of "biopsy confirmed small fiber neuropathy with painful paresthesias, balance issues, left hand tremor and leg stiffness," and sedating medications including THC, yet acknowledged no restrictions from pain, stiffness, fatigue or other symptoms reasonably expected to be associated therewith.  It therefore confirmed its finding of no restrictions on Ms. Wilby's ability to perform Any Occupation and, indeed, asserted her ability to do her former chief executive / project manager occupation.

49.     Hartford, in its appeal decision, did not address at all Ms. Wilby's eligibility for and continued receipt of Social Security Disability benefits at its insistence, and offered no explanation for why its determination of disability was different from that of the Social Security

11

Administration.

## FIRST CAUSE OF ACTION:
## IMPROPER TERMINATION OF MS. WILBY'S DISABLITY PLAN BENEFITS

50.    Plaintiff repeats and realleges paragraphs 1 through 49, above, as if set forth fully herein.

51.    Ms. Wilby has exhausted the Plan's required internal appeal procedures with regard to Hartford's termination of disability benefits.

52.    At all relevant times, Ms. Wilby has remained disabled under the terms of the Plan.

53.    Upon information and belief, Hartford's termination of Plan disability benefits on August 29, 2018, was erroneous, against the weight of the evidence, in violation of the Plan, and arbitrary and capricious because, *inter alia*:

    a.    Hartford discounted the symptoms and effects of Ms. Wilby's small fiber neuropathy and Parkinsonism, including her subjective complaints of exhaustion and pain, that prevent her from performing Any Occupation;

    b.    Hartford introduced objections – seven years after the fact and after Ms. Wilby had submitted her appeal – to neuropsychological tests which it had previously accepted as showing impairments in Ms. Wilby's cognition, without either requesting current testing that would have satisfied its newly imposed criteria for crediting the tests or telling Ms. Wilby she should submit such testing herself.

    c.    Hartford relied on general neurologists, whose methods and opinions revealed bias and/or inadequate expertise, to evaluate Ms. Wilby's neurological

condition, rather than a neurologist with particular expertise in neuromuscular peripheral neuropathy like the one who is treating Ms. Wilby.

d.   Hartford failed to address why its determination of Ms. Wilby's occupational capacity differed from that of the SSA, which it helped Ms. Wilby obtain. Hartford failed to consider Ms. Wilby's psychiatric conditions as they contribute to her physical pain, and instead addressed only her psychiatric condition in isolation.

e.   Hartford failed to address the effects on her work capacity of the medications Ms. Wilby takes to control her pain, neurological symptoms, and sleep.

54.    As a result of Hartford's improper termination of Plan benefits, Ms. Wilby has been damaged in the amount of $230,470.00, comprised of unpaid disability benefits under the Plan (at the rate of $6,065.00 per month) during the period between its improper termination of benefits on August 29, 2018, and October 28, 2021, and will continue to be damaged in the amount of $6,065.00 in every month that benefits are not paid from the date of this complaint to the date of judgment.

13

**WHEREFORE**, plaintiff demands judgment:

On her first cause of action against the Plan and Hartford, awarding her not less than $230,470.00 in Plan benefits, with pre-judgment interest from the accrual date of each monthly benefit, attorneys' fees and costs of this action, and such other, further and different relief as to the Court seems just, proper, and equitable.

Dated:      New York, New York
            November 2, 2021

MARK SCHERZER (MS-2622)
Law Office of Mark Scherzer
Attorney for Plaintiff
49 Nassau Street, Fourth Floor
New York, New York 10038
Tel: (212) 406-9606
Email: markscherzerlaw@verizon.net

14